IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JASON KANE,

    PLAINTIFF,

VS.                                                          CV NO.:

U.S. STEEL TUBULAR
PRODUCTS, INC.,

    DEFENDANT.                                         JURY TRIAL DEMANDED

COMPLAINT

## I. JURISDICTION

1.    This action for injunctive relief and damages is brought pursuant to 28 U.S.C. §§ 1331, 1343(4), 2201, 2202, and 42 U.S.C. § 12101 *et seq*. This is a suit authorized and instituted pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*. (ADA). The jurisdiction of this Court is invoked to secure protection for and to redress the deprivation of rights and Defendant's violation of the Acts and for injunctive relief and damages.

2.    Defendant, U.S. Steel Tubular Products, Inc., (hereinafter "Defendant") is an entity subject to suit under 28 U.S.C. § 1331, 28 U.S.C. §§ 2201 and 2202, and 42 U.S.C. § 12101 *et seq*. The jurisdiction of this Court is invoked to secure protection of and to redress deprivation of rights secured by the Americans with

Disabilities Act as amended, providing for injunctive and other relief against disability discrimination. Defendant employed at least fifteen (15) persons for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year.

3. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) within 180 days of the last discriminatory act (Exhibit A). Plaintiff further filed this lawsuit within ninety (90) days after receipt of the right-to-sue letter issued by the EEOC (Exhibit B).

## II. PARTIES

4. Plaintiff, Jason Kane, (hereinafter "Plaintiff") is a resident of Alabaster, Shelby County, Alabama, and performed work for the Defendant in the counties composing the Northern District of Alabama during the events of this case. Thus, pursuant to 28 U.S.C. § 1391(b), venue for this action lies in the Northern District, Southern Division.

5. Defendant United States Steel Corporation - Fairfield Tubular Operations (hereinafter "Defendant") is a company registered and doing business in the State of Alabama and has sufficient minimum contacts with the State of Alabama that it is subject to service of process in Alabama.

## III. STATEMENT OF FACTS

6. Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1 through 5 above.

7. Defendant hired Plaintiff on or about December 15, 2003.

8. Defendant employed Plaintiff as a Caster Operator Tech. III.

9. In 2013, Plaintiff's back injury resulted in him undergoing a surgery resulting in a multi-level cervical fusion and insert of hardware in his back and spine.

10. Plaintiff is disabled as his back injury prohibited lifting of objects in excess of forty-five pounds and prolonged standing.

11. Defendant has been on notice that Plaintiff is prohibited from lifting objects in excess of forty-five pounds and prolonged standing since July 8, 2013.

12. Defendant employed Plaintiff as an Caster Operator Tech. III until August 23, 2015.

13. On August 23, 2015, Defendant subjected Plaintiff and other employees to a reduction-in-force due to closing of the Steel Plant, including the caster division wherein Plaintiff worked.

14. Plaintiff remained in the job pool.

15. As a result of the reduction-in-force, Defendant re-classified all Operating Technicians as "Operating Technician I."

16. Defendant recalled Plaintiff to work on August 27, 2017.

17. Plaintiff returned to his employment with Defendant and was given a Physical Rating Classification and Restriction Report prohibiting lifting in excess of forty-five pounds and prolonged standing.

18. Plaintiff is, and was qualified, for the position of Third-Party Inspector so long as he has the reasonable accommodation of a person helping him lift or move objects that are in excess of forty-five pounds.

19. Defendant re-employed Plaintiff as a Third-Party Inspector .

20. Plaintiff's job duties as a Third-Party Inspector resulted in him performing job duties that were not in compliance with his Physical Rating Classification and Restriction Report.

21. Defendant employed Chris Cone.

22. Chris Cone performed the position of Shift Manager and was one of the Shift Managers that supervised the Plaintiff.

23. Defendant employed Craig Cone.

24. Craig Cone performed the position of Department Manager and he supervised the Plaintiff.

25. Defendant employed Brian Hill.

26. Brian Hill performed the position of Shift Manager and he supervised the Plaintiff.

27. Defendant employed Brent King.

28. Brent King performed the position of Shift Manager and he supervised the Plaintiff.

29. Defendant employed Van Godwin.

30. Van Godwin performed the position of Foreman and he supervised the Plaintiff.

31. Defendant employed Phillip Woods.

32. Woods performed the position of "Pipe Mill Training Center."

33. Defendant employed Scott Wadsworth.

34. Wadsworth performed the position of "Pipe Mill Training Center."

35. Defendant employed Shae Mosses.

36. Lee McDaniel performed the position of Area Manager and he supervised the Plaintiff.

37. Defendant employed Lee McDaniel.

38. Lee McDaniel performed the position of Department Manager and he supervised the Plaintiff.

39. Plaintiff informed Shae Mosses, Craig Cone, Chris Cone, Brian Hill, Brent King, Van Godwin, Lee McDaniel, Phillip Wood, and Scott Wadsworth that his job duties resulted in him performing tasks that were not in compliance with his Physical Rating Classification and Restriction Report.

40. On February 27, 2018, Defendant issued Plaintiff a Notification of Discipline that vaguely stated Plaintiff provided "unsatisfactory work on February 19, 2018."

41. Plaintiff disputed the disciplinary notice and Craig Cone acknowledged that Defendant should not have assigned Plaintiff to the position that he was working.

42. Plaintiff attended his regular physical on or about the last week of February 2018.

43. Defendant employs a Nurse Practitioner and Doctor on its premises.

44. Plaintiff informed Defendant's Nurse Practitioner that he believed his supervisors were causing him to violate his restrictions.

45. At Defendant's Nurse Practitioner direction, Plaintiff contacted his physician, Sean O'Malley, M.D., and obtained an updated restriction.

46. Defendant's Nurse Practitioner required Plaintiff to sign a release permitting Defendant's physician, Dr. Szabo, to contact Dr. O'Malley regarding Plaintiff's restrictions.

47. On March 2, 2018, Plaintiff provided an updated Physical Rating Classification and Restriction Report reiterating the need to not lift objects in excess of forty-five pounds and to avoid prolonged standing.

48. The Physical Rating Classification and Restriction Report informed Defendant that Plaintiff's restrictions were permanent.

49. Defendant informed Plaintiff it could not honor the medical restrictions.

50. Plaintiff then filed a grievance against Defendant through the United Steel Workers Union 1030 office.

51. Eugene Horn, an official with the United Steel Workers Union 1030, instructed Plaintiff to file for Sickness and Accident Benefits.

52. Horn also informed Plaintiff that Defendant treated Rickey Carr, an employee with permanent restrictions related to his disability, in a similar manner.

53. In March 2018, Defendant placed Plaintiff on a Short-Term Disability Leave.

54. As part of that Short-Term Disability Leave, Defendant provided a letter requiring Plaintiff to file for Social Security Disability Benefits by June 14, 2018.

55. On or about April 4, 2018, Plaintiff provided an updated work restriction form, completed by Dr. Sean O'Malley, that informed Defendant that Plaintiff was prohibited from lifting in excess of forty-five pounds and requiring a fifteen-minute break every ninety minutes.

56. Pursuant to Defendant's instructions, Plaintiff filed for Social Security Disability Benefits.

57. On July 19, 2018, the Social Security Administration denied Plaintiff's application for Social Security Disability Benefits.

58. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission on August 29, 2018.

59. From March 3, 2018, through October 2018, Defendant failed to contact Plaintiff about his modified medical restrictions.

60. Shortly thereafter, Defendant contacted Plaintiff to set up a meeting with its physician, Dr. Szabo.

61. Defendant determined Plaintiff could perform the essential functions of the Third-Party Inspector job within the confines of Dr. O'Malley's April 4, 2018 restrictions.

62. On October 22, 2018, Plaintiff attended his Return to Work Physical that was conducted on Defendant's premises by Defendant's medical staff.

63. During that physical, Defendant's Dr. Szabo informed Plaintiff that she would not return Plaintiff to his position until she spoke with Defendant's Department Manager of Employee Services Jodi Watson and Defendant's legal counsel Pat Thomas.

64. Defendant claimed it conducted a work/rest study of the position and found there was significant opportunity to rest during the normal course of the shift.

65. Plaintiff asked Dr. Szabo for a copy of the work/rest study, but she never provided a copy to the Plaintiff.

66. Defendant did not provide Plaintiff with a Physical Rating Classification and Restriction Report at the conclusion of the October 22, 2018 physical.

67. On October 31, 2018, Plaintiff returned to work.

68. On November 27, 2018, Defendant acknowledged an additional restriction in that Plaintiff cannot, and should not, push objects in excess of 500 pounds.

69. Defendant continued, and continues, to place Plaintiff in a position that violates Plaintiff's permanent work restrictions, including the prohibition of lifting objects in excess of forty-five pounds, and no pushing objects in excess of 500 pounds.

## IV. COUNT ONE - Americans with Disabilities Act - Discrimination

70. Plaintiff adopts by reference each and every material averment contained in paragraphs 1 through 69 above as if fully set forth herein.

71. In 2013, Plaintiff suffered a back injury that resulted in him undergoing a surgery resulting in a multi-level cervical fusion and insert of hardware in his back and spine.

72. Plaintiff's back injury affects him such that the major life activities of standing, lifting, and pushing are prohibiting and/or significantly restricted as compared to the average person in the general population.

73. Plaintiff has suffered from this back injury since 2013.

74. Since July 8, 2013, Defendant has been on notice of Plaintiff's restriction prohibiting the lifting of objects in excess of forty-five pounds and prolonged standing.

75. Plaintiff was qualified, with a reasonable accommodation for his disability, for the position of Third Party Inspector.

76. On March 2, 2018, Plaintiff provided an updated Physical Rating Classification and Restriction Report reiterating the need to not lift in objects in excess of forty-five pounds and to avoid prolonged standing.

77. The Physical Rating Classification and Restriction Report informed Defendant that Plaintiff's restrictions were permanent.

78. Defendant informed Plaintiff it could not honor the medical restrictions.

79. On or about April 4, 2018, Plaintiff provided an updated work restriction form, completed by Dr. Sean O'Malley, that informed Defendant that Plaintiff was prohibited from lifting in excess of forty-five pounds and requiring a fifteen-minute break every ninety minutes.

80. From April 4, 2018, through August 29, 2018, Defendant failed to contact Plaintiff about the modified work restrictions.

81. From March 3, 2018 through October 2018, Defendant failed to contact Plaintiff about his modified medical restrictions.

82. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission on August 29, 2018.

83. Shortly after Plaintiff filed his Charge of Discrimination, Defendant contacted Plaintiff to set up a meeting with its physician, Dr. Szabo.

84. Defendant determined Plaintiff could perform the essential functions of the Third-Party Inspector job within the confines of Dr. O'Malley's April 4, 2018 restrictions.

85. On October 22, 2018, Plaintiff attended his return to work physical on Defendant's premises.

86. During that physical, Defendant's Dr. Szabo informed Plaintiff that she would not return Plaintiff to his position until she spoke with Defendant's Department Manager of Employee Services Jodi Watson and Defendant's legal counsel Pat Thomas.

87. Defendant claimed it conducted a work/rest study of the position and found there was significant opportunity to rest during the normal course of the shift.

88. Plaintiff asked Dr. Szabo for a copy of the work/rest study, but she never provided a copy to the Plaintiff.

89. Defendant did not provide Plaintiff with a Physical Rating Classification and Restriction Report at the conclusion of the October 22, 2018 physical.

90. On October 31, 2018, Plaintiff returned to work.

91. But for Plaintiff's filing his Charge of Discrimination, Defendant would not have returned Plaintiff to work.

92. Defendant returned Plaintiff to work pursuant to his work restrictions stated by his physician Dr. O'Malley on or about April 4, 2018.

93. Defendant was substantially motivated by Plaintiff's disability and continuing need for healthcare in making the decision to not accommodate Plaintiff's disability in a timely manner.

94. As a result of Defendant's violation of the ADA, Plaintiff has been damaged, suffering loss of pay from March 3, 2018, through October 30, 2018, benefits, and mental anguish.

## V. COUNT TWO - ADA – Failure to Accommodate

95. Plaintiff adopts by reference each and every material averment contained in paragraphs 1 through 94 above as if fully set forth herein.

96. In 2013, Plaintiff suffered a back injury that resulted in him undergoing a surgery resulting in a multi-level cervical fusion and insert of hardware in his back and spine.

97. Plaintiff's back injury affects him such that the major life activities of standing, lifting, and pushing are prohibiting and/or significantly restricted as compared to the average person in the general population.

98. Plaintiff has suffered from this back injury since 2013.

99. Since July 8, 2013, Defendant has been on notice of Plaintiff's restriction prohibiting the lifting of objects in excess of forty-five pounds and prolonged standing.

100. Plaintiff was qualified, with a reasonable accommodation for his disability, for the position of Third Party Inspector.

101. On March 2, 2018, Plaintiff provided an updated Physical Rating Classification and Restriction Report reiterating the need to not lift in objects in excess of forty-five pounds and to avoid prolonged standing.

102. The Physical Rating Classification and Restriction Report informed Defendant that Plaintiff's restrictions were permanent.

103. Defendant informed Plaintiff it could not honor the medical restrictions.

104. On or about April 4, 2018, Plaintiff provided an updated work restriction form, completed by Dr. Sean O'Malley, that informed Defendant that

Plaintiff was prohibited from lifting in excess of forty-five pounds and requiring a fifteen-minute break every ninety minutes.

105. From April 4, 2018, through August 29, 2018, Defendant failed to contact Plaintiff about the modified work restrictions.

106. From March 3, 2018 through October 2018, Defendant failed to contact Plaintiff about his modified medical restrictions.

107. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission on August 29, 2018.

108. Shortly after Plaintiff filed his Charge of Discrimination, Defendant contacted Plaintiff to set up a meeting with its physician, Dr. Szabo.

109. Defendant determined Plaintiff could perform the essential functions of the Third-Party Inspector job within the confines of Dr. O'Malley's April 4, 2018 restrictions.

110. On October 22, 2018, Plaintiff attended his return to work physical on Defendant's premises.

111. During that physical, Defendant's Dr. Szabo informed Plaintiff that she would not return Plaintiff to his position until she spoke with Defendant's Department Manager of Employee Services Jodi Watson and Defendant's legal counsel Pat Thomas.

112. Defendant claimed it conducted a work/rest study of the position and found there was significant opportunity to rest during the normal course of the shift.

113. Plaintiff asked Dr. Szabo for a copy of the work/rest study, but she never provided a copy to the Plaintiff.

114. Defendant did not provide Plaintiff with a Physical Rating Classification and Restriction Report at the conclusion of the October 22, 2018 physical.

115. On October 31, 2018, Plaintiff returned to work.

116. But for Plaintiff's filing his Charge of Discrimination, Defendant would not have made efforts to provide Plaintiff with a reasonable accommodation to allow him to return to work.

117. Defendant returned Plaintiff to work pursuant to his work restrictions stated by his physician Dr. O'Malley on or about April 4, 2018.

118. On November 27, 2018, Defendant acknowledged an additional restriction in that Plaintiff cannot, and should not, push objects in excess of 500 pounds.

119. Defendant continued, and continues, to place Plaintiff in a position that violates Plaintiff's permanent work restrictions, including the prohibition of lifting objects in excess of forty-five pounds, and no pushing objects in excess of 500 pounds.

120. Defendant was substantially motivated by Plaintiff's disability and continuing need for healthcare in making the decision to not accommodate Plaintiff's disability in a timely manner.

121. As a result of Defendant's violation of the ADA for failing to accommodate Plaintiff's disability, Plaintiff has been damaged, suffering loss of pay from March 3, 2018 through October 30, 2018, benefits, and mental anguish.

## VI. PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays for the following relief:

A.  Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting in concert with the Defendant and at the Defendant's request from continuing to violate the terms of the Americans with Disabilities Act as amended;

B.  Enter an Order requiring the Defendant to make Plaintiff whole by honoring his request for a reasonable accommodation and enforcing the restrictions provided by his physicians that Defendant previously agreed to honor;

C.  Award him back pay, together with employment benefits, front pay, compensatory damages; punitive damages; special damages; nominal damages;

D.  Attorneys' fees and costs;

E. Plaintiff requests that the Court award Plaintiff equitable relief pursuant to 28 U.S.C. § 2201 and 42 U.S.C. § 12101 *et seq.* that the actions of Defendant violated the law; and,

F. Any different or additional relief as may be determined by the Court to which Plaintiff is entitled.

_____
Allen D. Arnold

**OF COUNSEL:**

ALLEN D. ARNOLD, Attorney at Law
A Member of the Five Points Law Group, LLC
2151 Highland Avenue Suite 205
Birmingham, AL 35205
T: (205) 252-1550
F: (205) 502-4476
allen@5pointslaw.com

**PLAINTIFF REQUESTS TRIAL BY STRUCK JURY**

_____
OF COUNSEL

**DEFENDANT'S ADDRESS:**
U.S. Steel Tubular Products, Inc.
c/o Corporation Service Company, Inc.
641 South Lawrence Street
Montgomery, AL, 36104